UNITED STATES, Appellee,

v.

Jose Rafael PEREZ–FRANCO,
Defendant, Appellant.

UNITED STATES, Appellee,

v.

Jose Luis LEON–URENA,
Defendant, Appellant.

Nos. 87–2060, 87–2061.

United States Court of Appeals,
First Circuit.

Submitted Jan. 6, 1988.

Decided Feb. 23, 1988.

John F. Cicilline, Providence, R.I., on brief, for defendant, appellant Perez–Franco.

Joseph Bevilacqua, Jr., Providence, R.I., on brief, for defendant, appellant Leon–Urena.

Lincoln C. Almond, U.S. Atty., and James H. Leavey, Asst. U.S. Atty., Providence, R.I., on brief, for appellee.

Before BOWNES, BREYER and TORRUELLA, Circuit Judges.

PER CURIAM.

On November 23, 1987, Jose Rafael Perez–Franco and Jose Luis Leon–Urena were charged, pursuant to 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i) and 846, with possession of a kilogram or more of heroin with intent to distribute. These offenses carry maximum terms of ten or more years. A magistrate held a combination probable cause-detention hearing on November 25, 1987. The district court judge reviewed the magistrate's detention orders concerning Leon on December 3, 1987 and concerning Perez on December 4, 1987. On December 9, 1987 the judge ordered both defendants detained pending trial. This appeal ensued.[1]

I.

At the detention hearings, the following evidence was presented. John Adams, a special agent with the Drug Enforcement Agency (DEA), testified. He related information that he had received from an undercover detective of the East Providence Police Department. According to Adams, the detective had purchased 1,000 packets of heroin for $8,000 from Perez and a Wilfredo Germosen on October 26, 1987. This transaction was videotaped. Adams made an identification of Perez based on the tape. Also on the tape is a discussion between the undercover detec-

---

1. Although defendants requested an expedited appeal, the transcript of the December 3, 1987 hearing was not received by us until mid-January, 1988. At the December 3 hearing, the judge decided to postpone, due to the lack of a transla-tor, the issues concerning the detention of Perez. We received the transcript of this latter hearing, held on December 4, in late January, 1988.

tive and Germosen and Perez concerning the purchase of 25,000 packets of heroin for $200,000. On November 20, 1987, a conversation concerning the sale of the 25,-000 packets of heroin was taped. In this conversation, Leon told a DEA informant that Leon could deliver only 20,500 packets which he would sell for $165,000. The purchase was set up for that evening. Perez and Leon were arrested as they were about to deliver the 20,500 packets of heroin; each defendant was carrying a bag which contained heroin.

Perez tendered the information that he has resided in Rhode Island for the past four years. He has permanent resident status. He is married and has ten brothers and sisters living in Rhode Island. Two sisters and one brother own homes. He has been employed continuously since his residence in Rhode Island; currently he is employed at the Xiony Market in Providence. Perez has no prior record of convictions, bail jumping violations or defaults on bail. Perez offered to comply with the following conditions: (1) warrantless searches of his person and premises; (2) relocation to Block Island, Rhode Island with notification to ferry and airline personnel concerning his presence on the Island; (3) daily reporting to the local chief of police; (4) a residence without a telephone; (5) no maintenance or use of an automobile; and (6) the wearing of a "home confinement monitoring bracelet." He also suggested that the homes of his relatives be posted as security.

Leon is a legal resident in the United States. He has been located in Rhode Island since 1976; he currently is working at the Xiony Market where he has been employed since 1980. His father and one sister live in Rhode Island. He has no prior record of arrests or convictions. Leon agreed to comply with the following conditions: (1) warrantless searches of his person and premises; (2) no presence of a telephone in his home and no ownership of an automobile; (3) daily reporting to the state or local police; (4) the wearing of a "home confinement monitoring bracelet"; and (5) the turning in of his passport.

The magistrate found probable cause to believe that both defendants committed the crimes with which they were charged. Based on the nature of the substance (heroin), the quantity seized, the substantial penalty facing defendants if convicted, the absence of evidence of addiction (thereby suggesting that defendants were motivated solely by greed) and, in the case of Perez, the involvement in two trafficking offenses, the magistrate concluded that both defendants presented a risk of flight and a danger to the community.

The judge agreed, finding the existence of "more than probable cause." He found that Leon's ties with the community were not "cast in concrete." As a result, given the seriousness of the charges he faced, the judge indicated that there were "strong inducements" for Leon to flee in order to avoid the consequences. As for Perez, the judge acknowledged that Perez had more than minimal family connections in Rhode Island. However, he stated that he was not prepared to accept as fact the suggestion that the family would post their property as security. He concluded that there was nothing before him that established any set of conditions that would assure the appearance of either defendant as required.

## II.

The district court relied on § 3142(e)'s rebuttable flight presumption:

Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)....

18 U.S.C. § 3142(e). This presumption represents Congressional findings of fact concerning persons who deal in drugs and the problems of assuring their presence at trial. *United States v. Palmer-Contreras,* 835 F.2d 15, 17–18 (1st Cir.1987); *United States v. Jessup,* 757 F.2d 378, 385 (1st Cir.1985). Congress found that persons charged with major drug offenses often have the foreign ties and resources neces-

sary to escape with ease to other countries; the imposition of a large bond is often ineffective in deterring flight. *Jessup,* 757 F.2d at 385 (citing S.Rep. No. 225, 98th Cong., 1st Sess. 20, 23–24 (1983), *reprinted in* 1984 U.S.Code Cong. & Admin.News, pp. 23, 26, 27). Congress therefore concluded that "flight to avoid prosecution is particularly high among persons charged with major drug offenses." *Id.*

 The burden of persuading the court that "no condition or combination of conditions will reasonably assure" defendant's presence at trial rests with the government. *Palmer–Contreras,* at 17–18; *Jessup,* 757 F.2d at 381. Defendant bears only the burden of production; that is, he must present some evidence to rebut the flight presumption. However, the presumption does not disappear even on the presentation of such evidence. *Palmer–Contreras,* at 17–18; *Jessup,* 757 F.2d at 383–84. Rather, the judge or magistrate continues to keep in mind, along with the other factors listed in § 3142(g),[2] the fact found by Congress—that generally drug traffickers pose special risks of flight. *See id.* As *Jessup* stated, "the magistrate or judge may still conclude that what is true in general is not true in the particular case before him." 757 F.2d at 384.

Applying these standards, we uphold the district court's conclusion that the evidence was insufficient to rebut the presumption of flight. Evidence favorable to Perez is that he has lived in Rhode Island for four years and that he has family here. He has no prior criminal record. However, he is not a citizen of the United States. Although he currently is employed, his place of employment, the Xiony Market, has been described as a focal point of a heroin distribution network. See Affidavit of John Adams in support of a search warrant for, among other locations, the Xiony Market, at ¶ 11.

Leon is in a similar position. He has been a resident of Rhode Island since 1976; he has some family members in that state. He also has no prior criminal record. He is

unmarried and is not a citizen of the United States. As with Perez, he is employed at the Xiony Market.

Against this evidence is the fact that defendants were charged with possession of, with intent to distribute, over a kilogram of heroin. The weight of the evidence against defendants appears strong. Perez was videotaped during the October 26 transaction; the November 20 transaction involved a sale to an undercover detective. Although neither defendant has a prior criminal record, they face serious consequences as a result of the current charges.

We agree with the district court and the magistrate that defendants' ties to the community do not appear strong enough to assure their appearance at trial. Given the gravity of the charges they face and their noncitizenship, we think the risk of flight is pronounced. The community ties of these defendants are not as established as those of the defendants in *Palmer–Contreras* where we affirmed pretrial detention. The *Palmer–Contreras* defendants had always lived in Puerto Rico; they were married and had children. Although the value of the heroin seized in this case does not approach the amount (over $7 million) of cocaine seized in *Palmer–Contreras,* the defendants here are not just "mules." Rather, they sell heroin for profit. The connections necessary to secure over one kilogram of heroin may reflect the resources necessary to escape with ease to another jurisdiction.

We also find that the district court did not err in refusing to release defendants pursuant to the conditions under which they agreed to live if not detained. There is no evidence that these actually are practical alternatives. There is no evidence that Perez contacted the Island authorities to determine if they would be willing to assist him in his relocation or that his family actually was willing to post their homes as security. Similarly, there is no evidence that a "home confinement monitoring bracelet" is readily available or workable.

---

**2.** The factors relevant to this case include (1) the "nature and circumstances of the offense charged"; (2) the "weight of the evidence" against defendant; and (3) the defendant's "fam- ily ties, employment, financial resources, length of residence in the community, community ties [and] past conduct". 18 U.S.C. § 3142(g)(1), (2) and (3)(A).

Nor do we see how defendants can be prevented from using telephones or automobiles other than those owned by them. In short, these conditions are insufficient to "reasonably assure the appearance of [defendants] as required" at trial.

█ Finally, Perez raises the argument that the detention hearing violated his due process rights. Specifically, he alleges that the government was required to provide him with notice concerning the particular rebuttable presumption—risk of flight or danger to the community—on which it would rely in objecting to bail. First, we find no evidence that Perez raised this claim below. He therefore cannot raise it now. *See Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir.1979). In any event, it is a patently frivolous claim. The statute already provides Perez with notice that *either* or *both* grounds may be relied on by the government *or* by the judicial officer. No more is required to protect the due process rights of Perez.

The district court's order is therefore *Affirmed.*