USCA1 Opinion

 

 March 19, 1992 [NOT FOR PUBLICATION] ___________________ No. 92-1112 UNITED STATES, Appellee, v. JOHN R. PASCIUTI, Defendant, Appellant. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Norman H. Stahl, U.S. District Judge] ___________________ ___________________ Before Breyer, Chief Judge ___________ Torruella and Selya, Circuit Judges. ______________ ___________________ Kenneth D. Murphy and Casassa & Ryan on brief for appellant. _________________ ______________ Jeffrey R. Howard, United States Attorney, and Peter E. ___________________ ________ Papps, Assistant United States Attorney, on brief or appellee. _____ __________________ __________________ Per Curiam. Appellant appeals from a detention order. He __________ challenges the district court's delay in reviewing the magistrates's detention order, the use of hearsay evidence coupled with the court's refusal to subpoena a witness, and the court's determination that no set of conditions would reasonably assure the safety of the community. I A September 27, 1991 indictment charged defendant with conspiracy to distribute methampetamines, 21 U.S.C. 846, and conspiracy to provide a felon with ready access to firearms, 18 U.S.C. 371, 922(g)(1). On October 15, 1991, bail was set at $10,000. The release order directed defendant not to commit any offense while on release and to refrain from possessing a firearm or controlled substance. Two weeks later, the district court was informed that, since his release, defendant had been arrested for disorderly conduct, possession of a dangerous weapon, and possession of a hypodermic needle and syringe. A magistrate revoked bail on November 7, 1991. Defendant sought district court review of that order on November 19, 1991 and requested a hearing. On January 7, 1992, defendant filed a notice for immediate release contending that as 50 days had passed since he requested review of the magistrate's order without the court having acted, defendant had been deprived of his right under 18 U.S.C. 3145(b) to prompt review of a detention order and -2- 2 consequently was entitled to release. The district court denied immediate release and scheduled a hearing. A hearing took place on January 14, 1992. The government introduced police reports of defendant's arrests since release. According to a report filed by Officer Roper of the Lowell Police Department, at approximately 9:00 p.m. on October 19 (several days after defendant had been released on bail), defendant's vehicle had been blocking the entrance to a street. Officer Roper stated in the report that he identified himself as a police officer and asked defendant to move his vehicle. Defendant responded with obscene and abusive language. When he persisted in an abusive and aggressive manner, he was arrested. Defendant's second arrest was described in a detailed report of the arresting officer, state trooper Driscoll. According to the report, Trooper Driscoll observed a pick up truck with defective rear tail light travelling on Route 128. Trooper Driscoll activated his blue lights, then his siren. The passenger (defendant) turned and looked at the police car, but the truck continued three quarters of a mile before stopping. Upon approaching the vehicle, Driscoll noticed that the passenger was sweating heavily and moving his legs against the seat. Questioned about the movement, defendant said he had spilled tonic and was wiping it up. Trooper Driscoll shone his flash light, saw no wetness, told defendant to exit and wait next to the guard rail, felt the floor and ascertained it was dry, reached under the passenger seat, and retrieved a velvet bag -3- 3 containing a fully loaded .22 caliber revolver. A second officer, Officer Devlin, arrived on the scene, removed the operator from the truck, brought him to the rear, handcuffed him, and then placed him in the cruiser. While the operator was being handcuffed, Driscoll found a hypodermic syringe/needle at defendant's feet. Both defendant and the driver were subsequently charged with possession of a dangerous weapon (handgun) without a license, Mass. G. L. ch. 269, 10, and unlawful possession of a hypodermic needle and syringe, Mass. G. L. ch. 94C, 27. The weapon offense is a felony under state law. Mass. G. L. ch. 274, 1 (crime punishable by imprisonment in the state prison is a felony). In addition to the police reports, the government presented the testimony of Agent Granatino of the Bureau of Alcohol, Tobacco, and Firearms. He had no personal knowledge of the events surrounding the October arrests, but, based on his review of the police reports and conversation with other officers, reiterated much of what was in the reports. He also described two other arrests of defendant. Again, his information was not based on personal knowledge, but rather on reports and conversation with other officers. In August 1989, he said, defendant had been stopped in New York driving a pick up truck with a cracked windshield. Defendant consented to a search of the truck. The search uncovered over an ounce of methamphetamine and five fully loaded handguns. Two of the guns had been reported stolen in New Hampshire, one was not traced, and two -4- 4 others were owned by George Caruso, a member of Hell's Angels, Lowell Chapter, a club of which defendant was an associate. In January 1990, defendant had been stopped in New Hampshire. His driving license had been suspended at the time. As defendant exited the vehicle, a hunting knife fell to the ground. The sheath of the knife was taped to the steering wheel. Defendant was fined $100 for driving without a license. The charge concerning the knife was filed without a finding. Defendant did not testify, but did submit an affidavit. Therein he admitted having sworn at the person who had asked him to move his vehicle on October 19, 1991, but denied knowing that the requester was a police officer. With respect to the October 29, 1991 incident, he started in part as follows: When we were stopped we were immediately ordered out of the truck immediately. I was told to sit on a guardrail. While I was on the guardrail a gun was found in a Crown Royal bag under the seat. I have no knowledge of how the gun was put into the truck, and I have not ever possessed the gun or the needle. Trooper Driscoll, upon finding the gun, stated: "What the hell is this - you could've blown me away!" I denied any knowledge of the gun, and I showed the Trooper the Coke can which I had put on the floor when he said that I was moving underneath the seat. The Trooper pointed the gun at me. The Trooper then began waving the gun towards traffic and had to be physically restrained by another Trooper. Defendant asked to subpoena Trooper Driscoll, but the -5- 5 district court denied the request.1 The district court upheld the magistrate's order revoking release. Defendant has now appealed. II Defendant first argues that the 59 day delay between defendant's November 19, 1991 motion to review the revocation order and the district court's January 17, 1992 order upholding revocation violates 3145(b)'s command that defendant's motion "shall be determined promptly." 18 U.S.C. 3145(b). The delay, defendant contends, entitles him to release. We disagree. United States v. Montalvo-Murillo, 110 S. Ct. 2072 _____________ ________________ (1990), is instructive. There, contrary to 18 U.S.C. 3142(f)'s direction (1) that a hearing "shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the government, seeks a continuance," and (2) that, except for good cause, continuances not exceed five (if requested by defendant) or three (if requested by the government) days, the first appearance requirement and time limits had not been honored. While acknowledging that the time limits were important to protect the liberty interest at stake, the Court nevertheless concluded that release was not mandated when a time limit was violated: ____________________ 1. Initially, in his motion to the district court seeking review of the magistrate's revocation order, defendant had asked to subpoena Trooper Driscoll or, alternatively, to be permitted to supplement the record with affidavits, documentory evidence, and oral argument. At the hearing, defendant asked that Driscoll be subpoenaed. -6- 6 Neither the timing requirements nor any other part of the act can be read to require, or even suggest, that a timing error must result in release of a person who should otherwise be detained. Montalvo-Murillo, 110 S. Ct. at 2077. ________________ To be sure, the present case deals with the prompt review provision, 18 U.S.C. 3145, rather than the prompt initial hearing provisions. A prime objective of both, however, is expeditious resolution of bail matters so that a defendant not be improperly detained. Just as a timeliness violation at the initial stage does not mandate release, even less should a delay in the review process -- after a defendant has received some procedural protection in the form of a hearing and a decision from one judicial officer -- necessarily require release. Consequently, we reject defendant's contention that release is the automatically mandated remedy for any violation of 3145(b)'s prompt review directive. Nor do we think that the particular circumstances of this case required release as a remedy. The delay in ruling on defendant's motion was inadvertent, the district court explained. Defendant's motion, one of many in the onslaught of motions filed by the 13 indicted defendants, did not come to the judges's attention until defendant filed his motion for immediate release. At that point, the court scheduled a hearing (within a week) and expeditiously ruled, upholding the magistrate's detention order. A mere phone call, the judge suggested, inquiring why the motion for review had not been acted upon, likely would have brought the -7- 7 motion to the fore and substantially lessened the delay. This is not a case of repeated protracted delay once the oversight was brought to the court's attention, and we conclude that a release order is not warranted as a remedy. III Defendant contends the evidence was insufficient to warrant detention. In so arguing, he faults the court's refusal to subpoena Trooper Driscoll. We will deal with these arguments together, but first it is useful to review the relevant statutory provisions. A Section 3148 of title 18 governs revocation of release orders. It provides in material part as follows: The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer- (1) finds that there is- (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of his release; and (2) finds that- (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or (B) the person is unlikely to abide by any condition or combination of conditions of release. -8- 8 If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the communÿÿÿÿÿÿÿty. If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of Section 3142 of the title and may amend the conditions of release accordingly. The district court concluded from the evidence concerning defendant's fidgeting with his feet when stopped and the absence of any wetness where defendant claimed to have spilled a soda that there was probable cause to believe defendant knowingly had the unlicensed firearm found under his seat under his control. As possession of an unlicensed firearm is a state felony, 3148's rebuttable presumption became operative. The court concluded that defendant had not overcome the force of the presumption, explaining as follows: [Defendant's] knowingly having an unlicensed, loaded, firearm under his control in a vehicle thirteen days after having been granted pretrial release conditioned upon his not possessing any firearms, and his record of allegedly possessing unlicensed, loaded firearms indicates that no condition or combination of conditions will assure that he will not pose a danger to the safety of any other person or the community. B Defendant's attacks are threefold. First, he claims that the government's heevidence was too unreliable to establish probable cause or to show that no condition will assure the safety of the community. Second, he argues that even if the -9- 9 government's hearsay evidence was sufficient to establish probable cause and trigger the statutory presumption, defendant nevertheless should have been permitted to subpoena Trooper Driscoll in order to challenge the government's showing. Third, he contends that he did adequately rebut the presumption of dangerousness and that detention is not warranted because conditions do exist which will reasonably assure the safety of the community. We deal with each in turn. 1. Government's use of hearsay. Defendant did not object to the admission of the police reports, and he acknowledges that the government may utilize reliable hearsay at detention hearings. United States v. _____________ Acevedo-Ramos, 755 F.2d 203, 204, 206 (1st Cir. 1985) ("[T]he _____________ lawfulness of . . . . using hearsay evidence at bail hearings is well established. Nothing in the new Act forbids the use of hearsay, where reliable."); 18 U.S.C. 3142(f) (rules concerning admissibility of evidence in criminal trials do not apply to detention hearings). But, defendant says, he has challenged the accuracy and reliability of Trooper Driscoll's reports. In these circumstances, defendant argues, the government was required to produce Trooper Driscoll's live testimony. In support, defendant relies on the following passage from Acevedo-Ramos: _____________ [T]he magistrate or judge possesses adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of underlying evidence or evidentiary sources where their accuracy is in ________________________________ question. Through sensible exercise of ________ this power of selection, the judicial -10- 10 officer can make meaningful defendant's right to cross-examine without unnecessarily transforming the bail hearing into a full-fledged trial or defendant's discovery expedition. (Emphasis added.) Acevedo-Ramos, 755 F.2d at 207-08. _____________ Defendant claims that Trooper Driscoll's testimony is needed because inconsistences between a two page report Driscoll had first filed and a 13 page one furnished to defendant on the day of the district court hearing undermined the reliability of the reports. The supposed inconsistency to which defendant points does not exist. In the first report, Driscoll stated that while talking with the driver, Driscoll noticed defendant "moving ______ underneath the seat." A sentence in the later report states that when Driscoll went to the passenger (defendant's) side, he _________ "observed the passenger to be moving his legs against the seat." Several sentences earlier, however, Driscoll had indicated that while on the driver's side he first noticed defendant's movement. ________ The reports are basically consistent.2 Defendant's quibbles with language did not undermined the reports' reliability requiring that Driscoll be produced as a witness. We conclude that the government's hearsay evidence was sufficiently reliable and supported the finding that there ____________________ 2. We do not deny that there are some ambiguities in the reports. For example, the first, terse report could be read as saying that Driscoll observed defendant reaching under the seat, while the second report describes kicking movements, the upshot being that any "reaching" apparently was with the feet, rather than the arms. -11- 11 was probable cause to believe defendant had committed a felony while on pre-trial release. 2. District court's denial of defendant's request to subpoena Driscoll. Section 3142(f) of title 18 states that at a detention hearing the defendant shall be afforded an opportunity to testify, to present witnesses, to cross- examine witnesses who appear at the hearing, and to present information by proffer or otherwise. Invoking this section as well as a claimed constitutional right to confront witnesses at a detention hearing, defendant contends he should have been permitted to subpoena Trooper Driscoll. Given the opportunity, defendant says he would have asked Driscoll the following: (1) why a fingerprint analysis defendant had requested had not been performed on the weapon; (2) the reason for the initial stop of the truck; (3) whether Driscoll had pointed his gun and had had to be restrained as claimed in defendant's affidavit; and (4) the general circumstance surrounding the charges such as the location of the weapon and needle. Courts have concluded that district courts have much discretion in determining whether a bail hearing shall be conducted by proffer or live testimony and have rejected the contention that either the constitution or 3142(f) necessarily requires that live witnesses be produced at detention hearings. See United States v. Cardenas, 784 F.2d 937, 938 (9th Cir. 1986) ___ _____________ ________ -12- 12 (rejecting contention that due process requires a defendant at a detention hearing to be afforded the right to confront and cross- examine witnesses; government may proceed by proffer); United ______ States v. Hurtado, 779 F.2d 1467, 1479-80 (11th Cir. 1985) ______ _______ (judicial officer has discretion to prevent detention hearings from becoming full-blown trials, but should exercise discretion with recognition that pretrial detention may restrict liberty for a significant time); United States v. Delker, 757 F.2d 1390, _____________ ______ 1395-98 (3d Cir. 1985) (rejecting contention that 3142(f) gives to defendants the choice whether to proceed by proffer or witnesses and concluding instead both that the section confers discretion on the district court to choose the mode of proceeding and that due process does not preclude using hearsay or mandate subpoenaing witness whose out-of-court statements are used to link defendant to criminal offenses). We need not now probe the precise limits of a district court's discretion, for we conclude that the four reasons defendant stated for subpoenaing Driscoll are so insubstantial that, even giving a fairly circumscribed view to the district court's discretion, we would find no abuse of discretion. The first question defendant would have posed to Driscoll -- why the gun had not been tested for fingerprints-- was answered. The district attorney had decided, as a tactical matter, not to perform a fingerprint analysis. Defendant exploited the lack of fingerprints at the hearing. He does not -13- 13 now argue that he is entitled as a matter of law to have the government test the weapon for fingerprints or show any need for Driscoll's testimony in this regard. Defendant's second reason, his desire to question Driscoll concerning the true reason for the initial stop of the pick up truck, similarly did not require that Driscoll be subpoenaed. Defendant contends that the stated reason in the police reports for the stop -- defective left rear tail light -- was not the real motivation for the stop since the operator was not charged with any offense relating to the tail light. Defendant thinks the real reason the truck was stopped was because it had a Hells Angels sticker on it. As long as there is a valid reason for a stop, the officer's subjective motivation is irrelevant. See, e.g., United ___ ____ ______ States v. Pringle, 751 F.2d 419, 425 (1st Cir. 1984) (motivation ______ _______ for boarding is irrelevant; the test is whether an objective basis existed). Defendant has not claimed that he expected to prove through Driscoll that there was no defective tail light and no basis for a stop. Rather, defendant's inquiry appears to have been directed at uncovering Driscoll's thought processes, an irrelevant matter. Regardless, however, the court was not required to turn the bail revocation hearing into a motion to suppress hearing. See United States v. Winsor, 785 F.2d 755, 756 ___ _____________ ______ (9th Cir. 1986) (upholding court's refusal to allow defendant to cross-exam government investigators and police officers for the purposes of showing lack of probable cause to arrest or -14- 14 likelihood of success on a suppression motion where defendant's proffer did not indicate that the government's proffered information was incorrect). The third reason -- Driscoll's alleged misbehavior in pointing his gun -- is irrelevant to the bail determination. Whether or not Driscoll overreacted after he found a gun under the seat occupied by defendant does not bear on the central issues in dispute at the revocation hearing -- the existence of probable cause to believe defendant had committed a felony and defendant's dangerousness. The last reason stated for calling Driscoll -- to question him concerning the general circumstances surrounding the charges such as the location of the gun and needle -- fails in the circumstance of this case. With respect to the gun, defendant does not deny that Driscoll recovered it from under the passenger seat. Rather, he contends he did not know it was there. But, defendant has failed to describe with any particularity what useful information he could hope to elicit from Trooper Driscoll bearing on defendant's knowledge. United ______ States v. Accetturo, 783 F.2d 382, 388-89 (3d Cir. 1986) (even ______ _________ though defendants had tendered evidence showing witness's unreliability (drug addiction, criminal and psychiatric history), court did not abuse its discretion in refusing to compel appearance of that witness, who was the government's primary source of information, where there was no reason to believe the -15- 15 witness would either provide evidence favorable to defendant or retract harmful evidence). The needle may present a different case. According to the judge's description of the evidence taken at the hearing before the magistrate (we have not been furnished with a copy of that tape), there was evidence that the needle was found on the ground between where defendant and the driver were standing. _______ Driscoll's report, in contrast, much more closely linked the needle to defendant, for it said the needle was at defendant's feet. Had the needle charge been the basis for the probable cause and dangerousness findings, then, perhaps, we would conclude that defendant should have been afforded more leeway to inquire into the location of the needle vis a vis where the operator and defendant had been standing. But the court's finding of dangerousness, as explained in the passage we have quoted at page 10 of this opinion, was based on defendant's involvement with firearms. As we read the district court's opinion, regardless whether or not probable cause existed to believe that it was defendant who possessed the syringe and needle, the district court's revocation order would remain the same. In these circumstances, then, any error in precluding defendant from questioning Driscoll concerning the location of the needle was harmless. 3. Sufficiency of evidence supporting a detention order. -16- 16 Defendant next argues that the evidence is insufficient to establish that no conditions of release will adequately safeguard the community. This court's review of the district court's order "is not de novo, but, rather, independent, 'giving deference to the __ ____ determination of the district court.'" United States v. ______________ Patriarca, 948 F.2d 789, 791 (1st Cir. 1991). _________ We have concluded that there was probable cause that defendant committed a felony while on release, namely, possession of a firearm without a license. Consequently, 3148's rebuttable presumption -- "that no condition or combination of conditions will assure that [defendant] will not pose a danger to the safety of ... the community" -- is operative. Like the rebuttable presumption addressed in United States v. Jessup, 757 _____________ ______ F.2d 378 (1st Cir. 1985), this presumption, we believe, does not disappear, but rather retains evidentiary force even after a defendant has met his burden of producing some rebuttal evidence. Here, defendant did present some evidence -- his affidavit claiming, among other things, that he had not possessed the gun -- and arguments why he should not be regarded as dangerous. He maintained that there was no evidence of violent character, violent crimes, or actual use of a firearm. At most, the record showed that on two occasions -- once pre-indictment (New York) and once subsequently (October) -- defendant had been in a vehicle which contained weapons. This simply was an -17- 17 insufficient basis upon which to conclude that defendant is dangerous, defendant argues. We disagree and endorse the district court's reasoning. The evidence that, so soon after having been released on condition that he not possess a firearm, defendant knowingly possessed one manifests disdain for the court's order and society's rules. In stressing the lack of evidence concerning actual violence or actual use of a weapon, defendant seems to be suggesting that by danger to the community, 3148 means physical danger to one or more persons. The statute is not so limited. Rather, as the legislative history indicates, continued criminal behavior is also a danger 3148 is aimed against: The commission of a serious crime by a released person is plainly indicative of his inability to conform to one of the most basic conditions of his release, i.e. that he abide by the law, and of the danger he poses to other persons and the community, factors which section 3148 recognizes are appropriate bases for the revocation of release. Nonetheless, there may be cases in which a defendant may be able to demonstrate that, although there is probable cause to believe that he has committed a serious crime while on release, the nature or circumstances of the crime are such that revocation of release is not appropriate. Thus, while the Committee is of the view that commission of a felony during the period of release generally should result in the revocation of the person's release, it concluded that the defendant should not be foreclosed from the opportunity to present to the court evidence indicating that this sanction is not merited. However, the establishment of probable cause to believe that the defendant has committed a serious crime while on release constitutes compelling evidence -18- 18 that the defendant poses a danger to the community, and, once such probable cause is established, it is appropriate that the burden rest on the defendant to come forward with evidence indicating that this conclusion is not warranted in his case. Therefore, the Committee has provided in section 3148(b) that if there is probable cause to believe that the person has committed a Federal, State, or local felony while on release, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to safety of any other person or the community. Senate Report No. 98-225, 98th Cong., 2d Sess. 35-36, reprinted _________ in 1984 U.S. Code Cong. & Ad. News 3182, 3218-19. __ Remaining is the question whether "there are conditions of release that will assure that [defendant] will not . . . pose a danger to the safety of . . . the community, and that [defendant] will abide by such conditions . . . ." Defendant states that he is willing to submit to random searches and monitoring. Defendant has not spelled out what he means by electronic monitoring. If he means that he should be allowed out into community, but restricted to a fairly small geographic area such as, for example, the city of his residence, defendant's argument is not be very compelling, for such a restriction would not prevent defendant from continued criminal behavior. If, on the other hand, defendant means he is willing to submit to home confinement, defendant's argument may conceivably have more force. To be sure there are circumstances where even home confinement is inadequate to safeguard the community against continued criminal behavior because defendant may be able to -19- 19 continue his criminal activities from home. United States v. ______________ Tortora, 922 F.2d 880, 894 (1st Cir. 1990) (not apparent how _______ conditions, including home confinement, would prevent defendant from planning with others to silence witnesses). Whether this is the case was not developed below. Furthermore, the record contains no information concerning the availability of effective home confinement monitoring systems. See United States v. Perez- ___ _____________ ______ Franco, 839 F.2d 867, 870 (1st Cir. 1988) (no evidence that a ______ home confinement monitoring bracelet is readily available or workable). Neither the defendant, the government, nor the district court addressed the feasibility, burden on the government, or advantages and disadvantages of home confinement, and, on this record, where we are not even sure whether defendant is suggesting home confinement as an alternative, we will not attempt to do so. Rather, we will affirm the detention order, but without prejudice to defendant's elaborating, in the district court, upon his proposal for electronic monitoring. Affirmed. ________ -20- 20