960 F.2d 144
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
UNITED STATES, Appellee,
v.
Peter KATTAR, Defendant, Appellant.
UNITED STATES, Appellee,
v.
Sayed HACHEM, Defendant, Appellant.
UNITED STATES, Appellee,
v.
David ABDOO, Defendant, Appellant.
 92-1126, 92-1129, 92-1127, 92-1128.
 United States Court of Appeals, First Circuit.
 April 21, 1992
 
 James B. Krasnoo on brief for appellant, Peter Kattar.
 Douglas I. Louison and Merrick & Louison on brief for appellant, Sayed Hachem.
 Albert F. Cullen, Jr. and Cullen & Butters on brief for appellant, David Abdoo.
 A. John Pappalardo, Acting United States Attorney, and Robert W. Iuliano, Assistant United States Attorney, on brief for appellee.
 Before Breyer, Chief Judge, Campbell, Senior Circuit Judge, and Selya, Circuit Judge.
 Per Curiam.
 
 
 1
 In these consolidated appeals, Peter Kattar, Sayed Hachem and David Abdoo appeal from the decision of the United States District Court for the District of Massachusetts denying their requests for release pending trial.
 
 BACKGROUND
 
 2
 Appellants were indicted, along with nine other defendants, on charges of conspiring to import hashish in violation of 21 U.S.C. § 963. Kattar and Abdoo also were charged with conspiring to possess hashish with the intent to distribute it in violation of 21 U.S.C. § 864.[1] The amount of hashish involved was approximately three tons. The government moved to detain appellants under 18 U.S.C. § 3142(f). A magistrate judge held a hearing concerning Kattar and Hachem on September 4, 1991. As for Abdoo, the same magistrate judge held hearings on September 9, November 27, and December 4, 1991. The magistrate judge determined that all three appellants presented a danger to the community and that no conditions or combination of conditions of release would reasonably assure the safety of the community. He also found that Kattar and Hachem presented risks of flight.
 
 
 3
 On appeal to the trial judge, new hearings were held as to each appellant. The trial judge upheld the detention orders entered by the magistrate judge; in addition, the judge concluded that Abdoo presented a risk of flight as well as a danger to the community. Although the judge did not make written findings, the transcripts of the hearings reveal that he clearly articulated the facts and reasons upon which he based his affirmance of the magistrate judge's detention orders.
 
 STANDARD OF REVIEW
 
 4
 It is by now well-settled that we employ an independent standard of review which nonetheless gives deference to the decision of the district court. See United States v. O'Brien, 895 F.2d 810, 814 (1st Cir. 1990). Because appellate courts are "ill-equipped to resolve factbound disputes, this standard cedes particular respect, as a practical matter, to the lower court's factual determinations." United States v. Tortora, 922 F.2d 880, 882-83 (1st Cir. 1990). Where the trial court has taken evidence and made carefully detailed findings, as in this case, the degree of deference is heightened. With these guidelines in mind, we turn to the merits of the detention orders.
 
 THE DISTRICT COURT'S FINDINGS
 
 5
 The grand jury indictment, which gave the district court probable cause to believe that appellants had committed offenses for which they could receive sentences of ten years or more for violating the Controlled Substances Act, 21 U.S.C. § 801 et seq., triggers the "rebuttable presumption" contained in § 3142(e). See United States v. Dillon, 938 F.2d 1412, 1416 (1st Cir. 1991). Thus, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community...." 18 U.S.C. § 3142(e). The burden of persuasion remains on the government and the presumption retains evidentiary weight where, as here and as in most cases, the defendants come forward with "some" refutatory evidence. See id.; see also United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988) (per curiam).
 
 
 6
 As for risk of flight, the government must establish by a preponderance of the evidence that no set of conditions of release will reasonably assure the presence of the appellants as required. See United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991) (preponderance of evidence standard applies to risk of flight determinations); Dillon, 938 F.2d at 1416. To measure whether the government has met this burden, the district court is required to take into account the relevant factors set forth in § 3142(g): (1) the weight of the evidence as to guilt; (2) the nature and circumstances of the crime charged; and (3) the characteristics of the accused, including community and family ties, past history, financial resources and employment. We summarize the findings of the district court.
 
 
 7
 (1) Weight of the Evidence
 
 
 8
 The evidence presented by the government was the result of an extensive investigation conducted by the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco and Firearms and the United States Customs Service. This investigation occurred over a period of more than one year and involved the use of a confidential informant and an undercover FBI agent, both of whom had direct contact with Kattar and Hachem; the government also employed physical and electronic surveillance, including the interception and recording of telephone and oral communications. The district court concluded that, in the light of such direct evidence, the government had a very strong case. The question whether evidence such as tape recordings will be admissable at trial does not preclude their consideration for pre-trial bail decisions. See Tortora, 922 F.2d at 886.
 
 
 9
 (2) The Nature of the Offense
 
 
 10
 Kattar acted as the organizer of the alleged conspiracy. He is a United States citizen. He has two passports, however, one issued by the United States and one issued by Lebanon. He also owns property in Lebanon and has a bank account there. Hachem is a citizen of Lebanon, although he has lived in the United States for the past ten years as a resident alien. According to statements made by Hachem, he had sufficient political contacts in Lebanon to expedite the importation of the hashish.
 
 
 11
 Through these contacts and others, Kattar had access to large amounts of hashish grown in Lebanon. Abdoo, a resident of Vermont, and another defendant provided Kattar with purchasers for the hashish-an organized crime network in Canada. If successful, Kattar planned to import hashish on a monthly basis. As part of the effort to bring the first shipment of hashish into this country, Kattar and Abdoo each advanced $100,000. In addition, Kattar travelled to Lebanon on two occasions. Hachem visited Lebanon more frequently; in fact, he personally oversaw the initial packaging of the hashish.
 
 
 12
 As a result of these efforts, a ship departed from Lebanon in May 1991. On it was a sealed container in which approximately 600 barrels were housed. The hashish was packed inside over 300 of the barrels under layers of olives and Lebanese spices. United States Customs officials seized the container when the ship arrived in Boston in August 1991. According to an FBI agent who testified at the September 9th hearing before the magistrate judge, the three tons of hashish had a street value in Canada of over $90,000,000.
 
 
 13
 (3) Individual Characteristics
 
 
 14
 (a) Kattar. The trial judge acknowledged Kattar's longstanding ties to the community in which he lived and the presence in his life of substantial family ties. Contrary to the government's assertion, the judge accepted Kattar's claim that he was legitimately involved in the financial services business. Nonetheless, the judge determined that Kattar's employment was "in no small part" connected to illegal activities. In addition to the drug trafficking scheme, there was evidence that Kattar intended to act as an arms importer. Specifically, when the undercover agent, posing as a foreign mercenary, asked whether Kattar could obtain guns for him, Kattar indicated that he could. At a subsequent meeting between Kattar, Abdoo and the agent, Kattar indicated that Abdoo would be securing the weapons requested by the agent.
 
 
 15
 The judge found that Kattar had international contacts and knowledge concerning ways to surreptitiously exit from this country and flee to Lebanon. Although not noted by the judge, it is undisputed that Kattar stated, on more than one occasion, that he would not remain in this country should he be apprehended. The pressure to flee, the court concluded, was particularly strong because Kattar, who is sixty-one years of age, faces, if convicted, what essentially may turn out to be a life sentence.
 
 
 16
 (b) Hachem. Like Kattar, the judge found that Hachem had the international contacts and know-how to effect a departure from this country. In addition, as a resident alien, Hachem, should he be convicted, would be faced with deportation after his prison term. Thus, the court pointed out, the only difference to Hachem is "whether or not he will serve time in an American prison before he's deported."
 
 
 17
 (c) Abdoo. The judge determined that Abdoo was a core figure in Kattar's operation, serving as a broker and as a financier. In so finding, the judge specifically rejected Abdoo's claim that he had withdrawn from the drug deal before the shipment arrived in Boston. The government contended that Abdoo also had been involved in two aborted attempts to smuggle hashish directly into Canada. These schemes involved the use of boats, diving teams, and underwater storage of the drugs at certain buoy markers. The judge concluded, however, that the evidence only supported a finding that Abdoo was quite familiar with international drug traffic in general and the above operations in particular. Abdoo's knowledge of the details of the two Canadian operations, the judge found, reflected access to non-public sources of information concerning the activities of organized crime in Canada.
 
 
 18
 As for Abdoo's involvement in the arms trade, the trial judge rejected the government's allegation that Abdoo had sought to purchase weapons from an individual in Vermont. The evidence, the judge concluded, was too conflicting. Nonetheless, the judge credited the information provided by the undercover agent that Kattar had identified Abdoo as Kattar's source of arms. The court noted that by his silence, Abdoo essentially had "ratified" Kattar's description of Abdoo's role.
 
 
 19
 Abdoo presented testimony and affidavits from individuals who had personal and professional relationships with him. These individuals attested to Abdoo's general reputation and charitable activities in the community and his good standing as a respected businessman. They generally stated that Abdoo would not flee if released, especially given the fact that he runs two successful businesses in Vermont.
 
 
 20
 The judge acknowledged that the decision whether to detain Abdoo pending trial presented a close question. On the one hand, Abdoo had no prior criminal history and no history of drug or alcohol abuse; his reputation in and impact on his community were positive. On the other hand, those who had submitted character references obviously were not familiar with the history and characteristics revealed by the charges contained in the indictment.
 
 
 21
 Weighing the seriousness of these charges and the strength of the government's case against Abdoo's "public character" and relation to the community, the court concluded that there were no conditions that would reasonably assure Abdoo's presence at trial. Specifically, Abdoo's familiarity with international drug operations and his apparent access to large amounts of cash supported a finding that Abdoo presented a risk of flight.
 
 DISCUSSION
 
 22
 On appeal, Kattar argues that it would, in fact, be very difficult for him to flee. He offers to turn over his Lebanese passport, maintaining that without it, his alleged Lebanese contacts could not aid him in entering that country. He next contends that he has no available financial resources. Because the first (and, he claims, only) drug shipment was confiscated, Kattar maintains he never actually possessed the hashish or realized any profit from selling it. He emphasizes that if his real estate holdings and those of his wife were used as security, there is no likelihood that he could raise the amount of money needed to flee. In addition, he avers that as a result of the interception of the first shipment, there is no existing drug organization that could assist him in relocating. As for his prior trips to Lebanon, Kattar avers that he travelled there reluctantly and, on one occasion, only at the urging of either the confidential informant or the undercover agent. Finally, he points to the fact that he was released prior to trial in a previous federal case and always had appeared as required.
 
 
 23
 Hachem argues that his ten-year residency in the community along with the absence of significant financial assets adequately rebuts the presumption of flight. In addition, as a minor player in the alleged conspiracy, Hachem contends that he did not have access to any of the money used to finance the drug enterprise. Without his passport and without aid from Kattar's organization which Hachem, like Kattar, maintains has essentially been disabled, he does not have the means or wherewithal to seek asylum elsewhere.
 
 
 24
 Abdoo argues that the government did not produce "clear and convincing" evidence that he presented a risk of flight. He points to his admittedly strong community ties and lack of criminal history. As for his access to cash to fund a departure, Abdoo maintains that there was no support for the court's finding that he had strong ties to organized crime in Canada. Rather, he asserts, the evidence "shows nothing more than monies becoming available to finance one deal from which Abdoo withdrew." Thus, Abdoo states, the court erred in finding that no conditions of release would reasonably assure his appearance at trial. Finally, Abdoo argues that his rights to due process and a speedy trial will be violated if he is detained pending trial. Because of the number of audiotapes of surveillance and the voluminous transcripts that must be reviewed, pretrial detention will be prolonged, he contends, through no fault of his own.
 
 
 25
 We find that the factors favoring detention outweigh those favoring release. Although Kattar has strong community and family ties, his own words render him a risk of flight. The fact that he appeared in court as required when he previously was under indictment for mail fraud does not change our calculation. The penal consequences of that offense were not as severe as those Kattar currently faces. As for Hachem, the prospect of deportation if he is convicted provides a motive for flight. This is not outbalanced by Hachem's ten-year residency in this country.
 
 
 26
 Although Abdoo presents a closer case, we think that the trial judge's finding that no conditions of release would reasonably assure Abdoo's presence at trial is supported by the evidence. We are mindful of his past history and reputation in the community. Nonetheless, this is no ordinary drug case. Abdoo was a central figure in financing and organizing a criminal enterprise which was successful in importing over three tons of hashish. Given the gravity of the charges and the strength of the government's case, the incentive to relocate is pronounced. We note, in relation to Abdoo's due process and speedy trial claims, that it is too early to ascertain, without undue speculation, whether his pretrial incarceration will be sufficiently long enough to trigger constitutional concerns. See Tortora, 922 F.2d at 889.
 
 
 27
 In sum, we find that the evidence indicates that all three appellants were involved in the kind of "highly lucrative" drug operation that prompted Congress to enact the Bail Reform Act. As we have explained before, the rebuttable presumption contained in § 3142(e) reflects Congress's finding that generally drug traffickers pose special risks of flight. See United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987) (per curiam). Thus, we hold that the district court did not err in determining that, despite appellants' proffer of evidence, no conditions of release would reasonably assure their appearance as required. Because we conclude that detention is required to prevent flight, we need not address the issue whether appellants also present a danger to the community. Cf. United States v. Jessup, 757 F.2d 378, 380 (1st Cir. 1985).
 
 
 28
 The judgment of the district court is affirmed.
 
 
 
 [1]
 In a separate indictment, Kattar was charged with money laundering in violation of 18 U.S.C. § 1956(a)(3)