USCA1 Opinion

 

 September 17, 1992 [NOT FOR PUBLICATION] ___________________ No. 92-1839 UNITED STATES, Appellee, v. JAIRO GIRALDO PARRA, Defendant, Appellant. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Hector M. Laffitte, U.S. District Judge] ___________________ ___________________ Before Torruella, Cyr and Stahl, Circuit Judges. ______________ ___________________ Luis Rafael Rivera on brief for appellant. __________________ Daniel F. Lopez Romo, United States Attorney, Carlos A. _____________________ __________ Perez-Irizarry, Assistant United States Attorney, and Jose A. ______________ ________ Quiles Espinosa, Senior Litigation Counsel, on brief for ________________ appellee. __________________ __________________ Per Curiam. Defendant Jairo Giraldo-Parra appeals from __________ an order denying his request for pretrial bail. We affirm. I. Giraldo-Parra and five codefendants have been charged with violating 21 U.S.C. 841(a)(1), 846 and 18 U.S.C. 2 by participating in a conspiracy to possess with intent to distribute cocaine and heroin between August and December 1991.1 During that time, Giraldo-Parra, a Colombian national, owned a restaurant in the Hato Rey section of Puerto Rico called "Mi Peque a Colombia." The thirteen count indictment alleged that the defendants used this restaurant as a front for their drug trafficking activities. Giraldo- Parra was specifically charged with aiding and abetting in possessing drugs for distribution and distributing 27.4 grams of heroin on August 29, 1991, 27 grams of heroin on September 25, 1991, 489.1 grams of cocaine on December 6, 1991, and .767 grams of heroin and 5.941 grams of cocaine on December 12, 1991. The Drug Enforcement Administration (DEA) arrested the five co-defendants on May 27, 1992 but was unable to locate Giraldo-Parra, who voluntarily surrendered to the authorities on the following day. A detention hearing was held before a magistrate judge on May 29, 1992. The transcript of that hearing is not before us but the magistrate judge's detention order indicates that Immigration and Naturalization Services (INS) employee Richard Escalera and DEA agents Pablo Rivera and ____________________ 1. The codefendants are Oscar Gonzalez-Lopez, Daniel Atilio- Adinolfi, Victor Rodriguez-Alvarez, Edgar Rodriguez-Velazquez and Jorge Omar Lopez-Almeida. James Baker testified for the government. Giraldo-Parra's counsel made a proffer on his behalf. On June 9, 1992 the magistrate judge issued a written detention order requiring that all the defendants, including Giraldo-Parra, remain committed. The magistrate judge found that the defendants had been charged with drug related offenses that triggered the presumption that they posed a risk of flight and danger to the community under 18 U.S.C. 3142(e).2 Based on the evidence discussed below, the magistrate judge found that no conditions could assure Giraldo-Parra's presence in court or safety of the community. Giraldo-Parra "appealed" this decision to the district court. A second evidentiary hearing was held before a district judge. At the conclusion of the hearing the district judge sustained the findings of the magistrate judge and denied bail. This appeal followed. II. ____________________ 2. 18 U.S.C. 3142(e) provides, in relevant part, that Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), ... . -3- The record before us consists of the transcript of the district court's hearing and the magistrate judge's detention order. We have observed that meaningful appellate review is possible if either the judicial officer initially considering the matter or the district judge provides a written statement of reasons underlying a detention or release order. United ______ States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990)(citing ______ _______ United States v. Moss, 887 F.2d 333, 338 (1st Cir. 1989)(per ______________ ____ curiam)). As the district judge sustained the magistrate judge's findings, we recite the evidence the magistrate judge found and supplement this description with the additional evidence adduced at the district court hearing. DEA agent Pablo Rivera generally related how one or more of the defendants sold drugs to undercover agents at or near Giraldo-Parra's restaurant on five occasions. On August 21, 1991 defendant Oscar Gonzalez-Lopez informed the agents that his source had the following drugs for sale: 1/8 kilogram of heroin for $29,000, 1 ounce of heroin for $7500, and 1 gram of heroin for $250. Gonzalez Lopez told the agents to go to Giraldo-Parra's restaurant. While the agents were parked outside, Gonzalez Lopez brought them a package of cigarettes containing heroin. On August 29, 1991, Gonzalez Lopez arranged to sell the agents an ounce of heroin for $7500. DEA Agent Pablo Rivera testified that this sale was conducted outside the restaurant and that defendant Rodriguez Alvarez -4- required the agents to pay first, after which Rodriguez Alvarez went inside the restaurant and retrieved the heroin.3 Later on, Giraldo-Parra arrived at the restaurant. Rodriguez Velazquez gave him a folded pack of money. On September 13, 1991 Rodriguez Alvarez sold an ounce of heroin to an undercover agent for $7000 after meeting at Giraldo-Parra's restaurant. On September 25th, after exchanging an ounce of heroin for $7000 at another restaurant, Rodriguez Alvarez took the money to Mi Peque a Colombia, where Giraldo-Parra and two other defendants were waiting. Rodriguez Alvarez asked defendant Daniel Atilio Adinolfi for his commission. Atilio Adinolfi referred Rodriguez Alvarez to Giraldo-Parra to collect his commission. Giraldo-Parra told Rodriguez Alvarez that $200 was missing from the proceeds of the sale. An informant met defendant Daniel Atilio Adinolfi at Giraldo-Parra's restaurant on December 6, 1991 and purchased 1/2 kilogram of cocaine for $5000. DEA agent Jefferson Moran described this transaction in more detail before the district ____________________ 3. During the interval between the magistrate judge's decision and the district court hearing Rodriguez Alvarez began cooperating with the government. The evidence before the district court indicated that Rodriguez Alvarez delivered an ounce of heroin to undercover agent Jefferson Moran on August 29, 1991, after obtaining the heroin from defendant Edgardo Rodriguez Velazquez (Giraldo-Parra's nephew). After the sale was completed, Giraldo-Parra telephoned the restaurant and was told that Rodriguez Alvarez had delivered the heroin. -5- court. According to Moran, the informant entered the restaurant and met with defendant Daniel Atilio Adinolfi. As the informant and Atilio Adinolfi were negotiating, a second undercover officer entered the restaurant and overheard the informant tell Giraldo-Parra that he was interested in buying a car from Atilio Adinolfi. Giraldo-Parra told the informant to take a long drive with Atilio Adinolfi and to buy the car if he liked it. The informant and Atilio Adinolfi then left the restaurant and entered a Burgundy Ford. They drove around the corner and consummated the sale. Their activities were surveilled by the DEA and by another codefendant, Jorge Lopez Almeida, who had followed the Ford on a motorcycle. The informant and Atilio Adinolfi returned to the restaurant and parked out front, still followed by the DEA and Lopez Almeida. The informant exited the restaurant with a brown paper bag and departed with the undercover agent. Lopez Almeida followed them until the local police stopped him to prevent his discovery of the undercover operation. At the district court hearing agent Moran further related that on December 12, 1991, DEA agent Ortiz and confidential informants went to the restaurant to buy a sample of heroin and to obtain 6 grams of cocaine that had been missing from the 1/2 kilogram sold on December 6, 1991. An informant entered the restaurant and greeted defendant Daniel Atilio Adinolfi, who indicated that Giraldo-Parra had -6- the heroin and that the informant should wait because Giraldo-Parra was speaking to other people. The informant then saw Atilio Adinolfi take something from Giraldo-Parra. Atilio Adinolfi immediately returned to the informant and gave him the sample of heroin and six grams of cocaine that had been missing from the half kilogram. Atilio Adinolfi told the informant he could pay for the heroin on the following day. Agent Moran testified that the DEA considered Giraldo- Parra to be a significant offender because DEA intelligence indicated that he was the head of an organization that imported a new type of Colombian heroin, 90-94% pure, that had been trying to make its way into the United States. Agent Amador testified that Rodriguez Alvarez said that while incarcerated together at the state penitentiary Giraldo-Parra and two other defendants threatened him because he had allowed an undercover agent to penetrate the organization. Giraldo-Parra allegedly instructed Rodriguez Alvarez to tell the authorities that he alone (i.e., Rodriguez Alvarez) was responsible for distributing narcotics. The evidence before the magistrate judge and judge as to Giraldo-Parra's history and personal characteristics indicated that Giraldo Parra is a resident alien who entered Puerto Rico legally around 1980. He married, had two children, and divorced in 1988. His ex-wife reported that he -7- provided child support payments. He has been employed for the past three years as an encyclopedia salesman earning approximately $28,000 per year. He has no real property and sold the restaurant and a video store that he owned in December 1991. Giraldo-Parra's family ties to Puerto Rico included a half-brother and common law wife, Aixa Santiago Nieves, with whom he had lived for approximately three years and had another child. Santiago related that Giraldo-Parra visits his two children from his previous marriage weekly. She described their own relationship as stable, although they had quarrels. She stated that he is diabetic and that she takes food to him in prison. Santiago testified that her parents were willing to post their house, which she estimated had a $100,000 value, as collateral for Giraldo-Parra's bail. Pretrial Services Officer Jose Oben deemed Giraldo- Parra's relationship with Aixa Santiago Nieves to be unstable because she had indicated that they had separated.4 While Giraldo-Parra had no prior arrests in Puerto Rico, shortly after his arrest the INS filed a detainer against him. Officer Oben recommended that, in view of the presumption that Giraldo-Parra presented a risk of flight and danger to ____________________ 4. DEA Agent Domingo Carrasquillo testified that another confidential informant had informed the DEA that Giraldo- Parra was involved with the daughter of another drug trafficker. He allegedly was with her when the DEA arrested the other defendants. -8- the community, Giraldo-Parra should be detained pending trial particularly because he appeared to be deportable due to the INS' detainer. The magistrate judge concluded that notwithstanding the evidence of Giraldo-Parra's family and community ties, in view of the statutory presumption, the fact that an INS detainer had been filed, and the fact that his relationship to his common law wife appeared unstable, Giraldo-Parra continued to pose both a risk of flight and danger to the community. In sustaining the magistrate judge's findings, the district court considered the same factors as well as the evidence that Giraldo-Parra is the leader of the organization charged with conspiracy, that the drug sales involved cocaine of high purity and a new type of heroin, and that Giraldo- Parra had participated in threatening the cooperating defendant.5 The court also viewed the evidence against Giraldo-Parra as strong. III. On appeal, Giraldo-Parra argues that he succeeded in rebutting the presumption of flight and dangerousness and that the government failed to meet its burden of proving that no conditions or combination of conditions could reasonably assure his appearance at trial or the safety of the ____________________ 5. We note that there was no evidence on the purity of the cocaine. -9- community. In particular, the defendant says that the evidence against him is weak because none of the alleged transactions took place inside the restaurant and there is no direct evidence of his participation in a sale of drugs. We afford the district court's order independent review, with deference to the determination of the district court. United States v. Patriarca, 948 F.2d 789, 791 (1st _____________ _________ Cir. 1991). This standard "represents an intermediate level of scrutiny, more rigorous than the abuse-of-discretion or clear-error standards, but stopping short of plenary or de __ novo review." United States v. Tortora, 922 F.2d 880, 883 ____ _____________ _______ (1st Cir. 1990). "[I]ndependent review ...can vary in intensity according to the care put into the decision below." Patriarca, 948 F.2d at 794. We consider whether "due _________ attention was given to all the statutory factors [in 18 U.S.C. 3142(g) and] ... shall give such deference as we think the care and consideration manifested by the district court warrant." United States v. O'Brien, 895 F.2d 810, 816 _____________ _______ (1st Cir. 1990). First, it is clear that the district court properly determined that the presumption that "no condition or combination of conditions will reasonably assure the appearance of the ... [defendant] as required and the safety of the community ... " applied to Giraldo-Parra. See 18 ___ U.S.C. 3142(e). Eight of the thirteen counts in the -10- indictment charged him with violations of the Controlled Substances Act, 21 U.S.C. 841(a)(1) and 846. The indictment established probable cause to believe that Giraldo-Parra committed one or more offenses for which he may receive a sentence of ten years of more. United States v. ______________ Vargas, 804 F.2d 157, 163 (1st Cir. 1986).6 ______ Notwithstanding the applicability of 3142(e)'s presumption, the government retains the burden of persuading the court by a preponderance of the evidence that "'no condition or combination of conditions will reasonably assure' the defendant's presence at trial." United States v. _____________ Perez Franco, 839 F.2d 867, 870 (1st Cir. 1988)(citation _____________ omitted). See also United States v. Patriarca, 948 F.2d 789, ___ ____ _____________ _________ 793 (1st Cir. 1991)(upholding district court's application of preponderance of the evidence standard). In contrast, proof that no conditions of release will reasonably assure the safety of any other person or the community must be by "clear and convincing evidence." See 18 U.S.C. 3142(f). ___ A defendant need only produce "some evidence" to rebut the presumption of flight. Perez-Franco, 839 F.2d at 870; ____________ ____________________ 6. Giraldo-Parra argues that he is likely to receive a sentence of less than ten years under the Sentencing Guidelines because the quantities of drugs involved are relatively small and he has no criminal record. This does not render the statutory presumption inapplicable. Rather, these considerations are relevant to the weight the presumption is afforded. See United States v. Moss, 887 F.2d ___ _____________ ____ 333, 337 (1st Cir. 1989). -11- United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985). _____________ ______ Thereafter, the presumption retains evidentiary weight, and "the magistrate or judge should still keep in mind the fact that Congress has found that [drug] offenders, as a general rule, pose special risks of flight. The magistrate or judge _______ should incorporate that fact and finding among the other special factors that Congress has told him to weigh ... [under 18 U.S.C. 3142(g)]."7 Applying these principles, ____________________ 7. Under 18 U.S.C. 3142(g), the district court is required to consider: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including- (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release... . -12- we conclude that the government has met its burden of persuasion that Giraldo-Parra poses a risk of flight. Giraldo-Parra is alleged to be the leader of an organization involved in importing high purity heroin into the United States from Colombia. While the quantities involved in the transactions are arguably small, the heroin was said to be a "new breed" of "very high quality" that had been trying to make its way to the United States. (App. 31- 32) This indicates that Giraldo-Parra is a drug offender with important foreign connections and that the presumption that he posed a risk of flight was due considerable weight even in the face of the evidence Giraldo-Parra adduced in rebuttal. We also think that the district court was warranted in concluding that the evidence against Giraldo- Parra is strong, particularly in view of Rodriguez Alvarez's statements. To be sure, the evidence before the magistrate judge was considerably less than that before the district judge. The government only placed Giraldo-Parra at the restaurant on two occasions (August 29 and September 25) at the hearing before the magistrate judge and on both occasions he did not arrive until after the sales had been consummated. Nevertheless, the evidence before the magistrate judge suggested that Giraldo-Parra received the proceeds of those sales. This conclusion was bolstered by Rodriguez Alvarez's statements as described to the district judge. In addition, -13- agent Moran's testimony suggested that Giraldo-Parra invited the informant to test the cocaine that was the subject of the December 6th sale and that he also gave defendant Atilio Adinolfi the sample of heroin given to the undercover agents on December 12th. The circumstantial and direct evidence before the district court thus tended to directly implicate Giraldo-Parra in drug trafficking. The evidence tending to rebut the presumption was that Giraldo-Parra had resided in Puerto Rico since around 1980, had a positive employment history as an encyclopedia salesman, and family ties to three children, his common law wife, and half brother. In addition, Giraldo-Parra has no criminal record and voluntarily surrendered to the authorities after his counsel advised him to do so. While he is licensed to carry a gun, he has no history of violence. Various persons may be able to post property to secure bail. Weighing against these factors was the evidence that his relationship to his common law wife is unstable and that he participated in threatening the cooperating defendant, Rodriguez Alvarez. In view of the fact that the defendant is not a citizen, the evidence against him is strong, and the offenses with which he stands charged are serious, we agree that the evidence of Giraldo-Parra's family and community -14- ties does not appear strong enough to assure his appearance at trial.8 Affirmed. _________ ____________________ 8. As we conclude that the district court was justified in concluding that Giraldo-Parra poses a risk of flight, we need not consider whether the evidence met the "clear and convincing" standard of proof on the issue of dangerousness. See 18 U.S.C. 3142 (f). Cf. United States v. Jessup, 757 ___ ___ ______________ ______ F.2d at 380. -15-