**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 04-1721

UNITED STATES OF AMERICA,

Appellee,

v.

JOSE VALDIVIA,

Defendant, Appellant.

---

[Hon. Daniel R. Domínguez, U.S. District Judge]

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

---

Before

Selya, Lynch and Lipez,
Circuit Judges.

---

Nicolas Nogueras Cartagena on brief for appellant.
H.S. Garcia, United States Attorney, Sonia I. Torres-Pabón,
Assistant United States Attorney, and Nelson Pérez-Sosa, Assistant
United States Attorney, on brief for appellee.

---

July 22, 2004

---

**Per Curiam**.  In this bail appeal, defendant José Valdivia claims that the district court erred in ordering him detained without bail.  "[U]pon careful review of all the facts and the trial judge's reasons," United States v. O'Brien, 895 F.2d 810, 814 (1st Cir. 1990), "tempered by a degree of deference to the determinations made below," United States v. Tortura, 922 F.2d 880, 882-83 (1st Cir. 1990), we find no basis to conclude that "a different result should have been reached."  O'Brien, 895 F.2d at 814.  Accordingly, we affirm.

Where, as here, there is probable clause to believe that the defendant committed certain drug offenses carrying a minimum prison term of ten years or more, Congress has established a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required" if defendant is released pending trial.  18 U.S.C. § 3142(e), (f)(1)(C).  Congress based that presumption on findings that "'flight to avoid prosecution is particularly high among persons charged with major drug offenses'" and that "'drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries.'" United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985)(quoting S. Rep. No. 225, at 20 (1983), reprinted in 1984 U.S.C.C.A.N. 1, 23).

"[T]o 'rebut' the presumption, the defendant must produce some

-2-

evidence . . . that what is true in general is not true in the [defendant's] particular case." Jessup, 757 F.2d at 384. But, even if the defendant produces sufficient evidence to rebut the presumption, "the magistrate or judge should then still keep in mind the fact that Congress has found that [drug] offenders, as a general rule, pose special risks of flight . . . [and] should incorporate that fact and finding among the other special factors that Congress has told [judges] to weigh when making . . . bail decision[s]." Jessup, 757 F.2d at 384. The amount of weight to be given to the presumption depends on how closely the defendant's case "resemble[s] the congressional paradigm." Id. at 387. Regardless of whether the presumption is rebutted, the burden of proof remains on the government. Id. at 381.

Here, the evidence produced and proffered by Valdivia focused on his strong family ties, his steady and gainful employment history, his good reputation in the community, and his relatives' willingness to take custody of him and help finance his bail. We need not decide whether that evidence was sufficient to rebut the presumption, because, as discussed below, the district court's careful application of the statutory factors to the particular facts of this case readily withstands scrutiny under the intermediate standard of review applicable here. See Tortura, 922 F.2d at 883.

In concluding that Valdivia presented a high risk of flight,

the district court appropriately gave considerable weight to the presumption and the underlying congressional findings because, as the judge concluded, "the particular facts surrounding [Valdivia] precisely fit the Congressional concerns of enhanced flight risk." In particular, the evidence proffered by the government, that Valdivia was part of a large organization to import and distribute 60 to 80 kilograms of heroin moved during the three-year time span of the conspiracy, is sufficient to characterize this offense as the kind of "major drug offense" that the presumption was designed to address. As the district court further found, Valdivia was "a main cog" in that operation: He recruited crew members of cruise ships or other couriers to carry the drugs into Puerto Rico, he received the drugs when they arrived, and he coordinated the further distribution of the drugs to the United States. The evidence that Valdivia had strong connections at the Puerto Rico Port Authority, where he worked; at the international airport; and in foreign countries, including Aruba and Venezuela, where other members of his drug organization had previously fled, also fit the congressional paradigm of a "drug trafficker[] [who] ha[s] . . . established ties outside the United States . . . [and] ha[s] both the resources and foreign contacts to escape to other countries." As the district court concluded, "a conspiracy to move sixty to eighty kilos of heroin undetected through major ports and airports, evading security, . . . qualifies as [a] major drug operation

capable of expeditiously moving defendant out of the jurisdiction."

In addition to the presumption itself, the district court also appropriately relied on the strength of the evidence against Valdivia. See United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendant[] is strong, the incentive for relocation is increased"). That evidence included proffered testimony of two cooperating coconspirators as to Valdivia's role in the operation, a proffered video recording of Valdivia meeting with two persons who arrive to collect money from drug activities, and taped telephone conversations identifying Valdivia as a person having the financial resources to pay for drug operations and knowing the whereabouts of a courier and of missing heroin. Based primarily on that strong evidence of guilt, coupled with the presumption, the district court correctly concluded that Valdivia presented a high risk of flight.

The evidence also warranted the district court's further conclusion that the conditions proposed by Valdivia ($8,000 bail and oversight by his relatives)[1] would be insufficient to "reasonably assure [his] presence" at trial. 18 U.S.C. § 3142(e). Given the evidence of Valdivia's own financial resources and his membership in a large drug organization, the court correctly

---

[1]The alternative conditions recommended by pretrial services were based solely on Valdivia's past history and therefore did not take into account the facts of the offense, the strength of the evidence against him, or the statutory presumption.

-5-

concluded that the risk of losing $8,000 would not be sufficient to prevent Valdivia from fleeing. For major drug traffickers, "even a large bond may be just a cost of doing business." Palmer-Contreras, 835 F.2d at 17. Nor was it reasonable to believe that Valdivia's family would be able to prevent him from fleeing, given his strong connections at the ports and the airport and in foreign countries and his strong motivation to flee.[2]

In sum, based on the presumption and the statutory factors as applied to the particular facts of this case, we find no reason to conclude that "a different result should have been reached" by the district court.[3] Accordingly, the district court's decision is affirmed.

---

[2]Because we find that the district court correctly concluded that Valdivia presented a risk of flight that could not be avoided by imposing the conditions Valdivia proposed, we need not reach the question of whether his release would also impose an unavoidable risk of danger to the community.

[3]To the extent that Valdivia challenges the constitutionality of the district court's decision, that argument is foreclosed by the district court's correct conclusion that denial of bail was necessary to prevent Valdivia's flight. Where, as here, the risk of flight is unusually high, there is no constitutional right to bail. United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985).