**UNITED STATES of America,**
**Plaintiff,**

v.

**Jorge Alberto PEREZ–LUGO**
**[2], Defendant.**

**Criminal No. 13–573–02 (FAB).**

United States District Court,
D. Puerto Rico.

Oct. 10, 2013.

Dina Avila–Jimenez, United States Attorneys Office, San Juan, PR, for Plaintiff.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

Before the Court is the United States' motion pursuant to 18 U.S.C. § 3145(a)(1) for a *de novo* review of the magistrate judge's release order, as well as the relevant responses, replies and surreplies. (Docket Nos. 29, 36, 41, 44, and 47.)

## I. Background

On August 17, 2013, Jorge Perez–Lugo was arrested at the JFK airport in New York after arriving from Argentina. (Docket No. 29 at ¶ 2.) On August 20, 2013, a federal grand jury returned an indictment against Perez–Lugo and Jose Diaz–Rosado for violations of 21 U.S.C. §§ 952, 960, 963, and 846. (Docket No. 7.)

Perez–Lugo's bail hearing was held before Magistrate Judge Carreño–Coll on September 13, 2013. The United States asked for detention, considering the presumption that defendant Perez–Lugo posed a flight risk and danger to the community.[1] Perez–Lugo proffered evidence emphasizing his strong family ties; his steady and gainful employment history; his lack of criminal history, as well as his lack of history of drug or alcohol abuse, violence, or mental illness; and his family's willingness to take custody of him and finance his bail. (*See* Docket No. 40.) Magistrate Judge Carreño–Coll issued an order for Perez–Lugo's conditional release. (Docket No. 34.) Upon the government's motion, the Court granted a stay of the release order. (Docket Nos. 20 & 21.) The government now moves for a revocation of the release order pursuant to 18

---

1. At the detention hearing, the government's arguments emphasized the defendant's flight risk because, in the government's opinion, the defendant produced no evidence rebutting the presumption that he was a danger to the community.

U.S.C. § 3145(a)(1). (Docket No. 29.) [2]

## II. Legal Standard

### A. The Bail Reform Act

The Bail Reform Act provides the procedural and substantive rules for determining the appropriateness of pretrial detention for defendants. 18 U.S.C. § 3142. Pursuant to 18 U.S.C. § 3142(e), where there is probable cause to believe that a defendant has committed certain enumerated crimes, including an offense for which a maximum term of imprisonment of 10 years is prescribed in the Controlled Substances Act and the Controlled Substances Import and Export Act (21 U.S.C. §§ 801, 951 et seq.), a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." *Id.* § 3142(e); *see United States v. O'Brien,* 895 F.2d 810, 814–15 (1st Cir.1990). Congress based that presumption on findings that " 'flight to avoid prosecution is particularly high among persons charged with major drug offenses' " and that " 'drug traffickers often have established ties outside the United States ... [and] have both the resources and foreign contacts to escape to other countries.' " *United States v. Jessup,* 757 F.2d 378, 384 (1st Cir.1985) (quoting S.Rep. No. 225, at 20 (1983), *reprinted in* 1984 U.S.C.C.A.N. 1, 23).

■ To rebut the presumption, the defendant must produce "some evidence" to the contrary, *O'Brien,* 895 F.2d at 815 (internal citation omitted), in order to show that "what is true in general is not true in the particular case before [the Court]." *United States v. Perez–Franco,* 839 F.2d

867, 870 (1st Cir.1988) (internal citation omitted). "The government retains the burden of proving that no conditions will reasonably assure the defendant's appearance." [3] *O'Brien,* 895 F.2d at 815. Once the defendant has come forward with some evidence, the presumption remains a factor to be considered by the Court in determining whether the defendant should be detained prior to trial. *Id.* (internal citations omitted).

### B. Standard of Review for a Release Order

■ If a magistrate judge orders the release of a person, the government may move the district court for a revocation of the order. 18 U.S.C. § 3145(a); *United States v. Godines–Lupian,* 816 F.Supp.2d 126 (D.P.R.2011) (Gelpi, J.). A district court reviews the magistrate judge's order *de novo, United States v. Tortora,* 922 F.2d 880, 883 n. 4 (1st Cir.1990), and need not defer to the magistrate judge's findings or give specific reasons for rejecting them. *United States v. Koenig,* 912 F.2d 1190, 1191–92 (9th Cir.1990); *United States v. Leon,* 766 F.2d 77, 80 (2d Cir. 1985); *United States v. Delker,* 757 F.2d 1390, 1394–95 (3d Cir.1985); *United States v. Medina,* 775 F.2d 1398, 1402 (11th Cir. 1985). A district court may take additional evidence or conduct a new evidentiary hearing when appropriate. *Koenig,* 912 F.2d at 1193; *Delker,* 757 F.2d at 1393–94; *United States v. Fortna,* 769 F.2d 243, 250 (5th Cir.1985).

■ To determine whether pretrial detention is warranted, the judicial officer must consider the statutory factors set

---

2. The government and defense counsel agree that an additional hearing is not necessary for this determination. (Docket Nos. 38 & 41.)

3. The government must establish risk of flight by a preponderance of the evidence, and danger to the community by clear and convincing evidence. *United States v. Patriarca,* 948 F.2d 789, 792–93 (1st Cir.1991).

forth in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant;[4] and (4) the danger that would be posed to the community by the defendant's release. *Tortora*, 922 F.2d at 884. "Detention determinations must be made individually and, in the final analysis, must be based on evidence which is before the court regarding the particular defendant." *Id.*

## III. Analysis

■ After reviewing the parties' submissions and the record of the proceedings before Magistrate Judge Carreño–Coll, the Court addresses the Section 3142(g) factors in turn.

### A. *The Nature and Circumstances of the Offense Charged*

Perez–Lugo is charged with conspiracy to import more than five (5) kilograms of cocaine in violation of 21 U.S.C. §§ 952, 960, 963, and 846. (Docket No. 7.) The accusations against Perez–Lugo include that he 1) paid $43,000 in cash for a Pro–Line vessel that was used in a drug smuggling operation, and 2) conspired with other individuals to arrange a drug-smuggling trip to Puerto Rico, involving a boat transporting 1,032 kilograms of cocaine. There are no allegations, the defendant emphasizes, that Perez–Lugo committed these acts with any weapons or violence. Nor was Perez–Lugo on probation, parole, or

supervised release when the alleged offense occurred.

Additionally, the Court takes into consideration the circumstances of the civil forfeiture action pursuant to 21 U.S.C. § 881(a)(6)[5] that is pending against Perez–Lugo in the Eastern District of New York, because they bear on his risk of flight. On May 2, 2012, Perez–Lugo and his business partner Mariano DeJesus Rivera ("Rivera") were detained at the JFK airport as they attempted to transport $599,810.00 through airport security. (Docket No. 41–1.) Perez–Lugo was wearing his American Airlines flight attendant uniform, and the money was packaged in 24 American Airlines envelopes labeled "priority AA.com RSVP Client Invitations 05/19/12 Dom. Rep. Marketing and Promotion." Perez–Lugo admitted to agents that he and his companion used the American Airlines uniform and envelopes in order to avoid raising suspicion regarding the transportation of such large amounts of cash. (Docket No. 41–1 at pp. 5–6.) Perez–Lugo and Rivera claimed that the currency was being transported for their co-owned business, "Star Creators," which does not have a bank account and only operates in cash. *Id.* The government contends that a K–9 alerted positive for the odor of narcotics on the seized funds, (Docket No. 41–1 at ¶ 15), and claims the money is connected to Perez–Lugo's drug trafficking activities. The civil forfeiture proceeding has been stayed pending the outcome of this criminal case. (Docket No. 44 at ¶ 2.)

---

**4.** This factor includes consideration of: (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense, the person was on probation, parole, or other pre-trial release. 18 U.S.C. § 3142(g).

**5.** This statute provides for forfeiture of all moneys furnished or intended to be furnished by any person in exchange for a controlled substance in violation of Title 21, Subchapter I of the United States Code. 21 U.S.C. § 881(a)(6).

To rebut the presumption of detention, Perez–Lugo proffered evidence regarding the circumstances underlying the seizure proceeding. Perez–Lugo attempted to explain the cash business dealings of Star Creators; offered an explanation for wearing his American Airlines employee uniform while traveling; pointed to the fact that he was released and allowed to travel after the money was seized at JFK; and quoted the testimony of a Special Agent at a probable cause hearing in New York, indicating that the agent did not know if the money seized was connected to drugs. (Docket No. 36.) Additionally, Perez–Lugo emphasized that no weapons or violence were used during the charged offense. (Docket No. 40 at p. 9 l. 9–11.)

The Court finds that the government has established by a preponderance of evidence that the scope and seriousness of the alleged offenses warrant a finding that defendant Perez–Lugo poses a risk of flight. A conspiracy to transport 1,032 kilograms of cocaine over international waters qualifies as a major drug crime. *See United States v. Valdivia*, 104 Fed.Appx. 753, 754 (1st Cir.2004) (per curiam)(finding that evidence the defendant participated in an organization that imported 60 to 80 kilograms of heroin was sufficient to characterize the offense as the kind of "major drug offense" the presumption was designed to address). Perez–Lugo failed to put forth sufficient evidence to distinguish his case from "the fact found by Congress—that drug traffickers pose special risks of flight." *United States v. Perez–Franco*, 839 F.2d 867, 870 (1st Cir.1988). Moreover, the Court is troubled by the circumstances surrounding both the alleged offense and the civil forfeiture proceeding, which the defendant has failed to explain adequately. The combination of Perez–Lugo's unexplained access to large amounts of cash on two separate occasions in connection with allegations of drug traf-

ficking, his strong international connections, and the use of his position as an airline employee to transport cash, convinces the Court that the facts of this case fit the Congressional concerns of enhanced flight risk.

### B. *The Weight of the Evidence Against Perez–Lugo*

The evidence proffered against Perez–Lugo includes testimony of agents involved in his arrest, testimony regarding the drug smuggling coordination, admissions of other co-conspirators, phone records, photographs, toll records, and seized narcotics. The Court finds that the weight of the evidence provides no reason to call into doubt the appropriateness of the presumption against release.

### C. *The History and Characteristics of the Defendant*

Defense counsel presented evidence that Perez–Lugo is a member of an extensive and very supportive family; is a loving father of five; has a consistent employment history; and does not have any history of drug or alcohol abuse, mental illness, or violence. Additionally, counsel argues that because he has no criminal record, he has no history of failing to appear at court proceedings. For these reasons, the U.S. Probation Office recommended that Perez–Lugo be placed on home detention in Pennsylvania, which would allow his wife to return to work at American Airlines, while he stays home to care for the couple's seven-month-old baby.

The Court is not convinced that Perez–Lugo's supportive family network or personal characteristics neutralize his flight risk. Perez–Lugo has extensive international ties: he has children in Ohio, New York, Pennsylvania, and San Juan; he conducts business in Canada and the Dominican Republic; his brother is a U.S.

Customs and Border Patrol employee in Canada; his wife is an American Airlines employee who booked last minute travel for Perez–Lugo;[6] and the record shows he recently traveled to Argentina[7] and St. Croix.

The evidence proffered by Perez–Lugo is insufficient to rebut the presumption that he poses a flight risk. The Court is not persuaded that the conditions of his release (including confiscation of his passport and home detention) will sufficiently assure his appearance at court proceedings, nor does the Court believe that any combination of conditions could assure it.

### D. The Danger Posed to the Community by the Defendant's Release

Though a finding that Perez–Lugo poses a risk of flight provides sufficient basis for a detention order, the evidence presented also demonstrates that Perez–Lugo would pose a danger to the community if released. "[T]he harm to society caused by narcotics trafficking is encompassed within Congress's definition of 'danger.'" *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) (citing S.Rep. No. 98–225, at 15, 1984 U.S.C.C.A.N. 3182, 3198 (1983)).

Perez–Lugo proffered evidence emphasizing his strong family ties; his steady and gainful employment history; his lack of criminal history, as well as lack of history of drug or alcohol abuse, violence, or mental illness; and his family's willingness to take custody of him and finance his bail. Perez–Lugo's alleged conduct here did not involve violence or the use of weapons. Still, despite the evidence put forth by Perez–Lugo, the government has established by clear and convincing evidence that his release would pose a danger to the community. In addition to the evidence on which the Court based its finding of risk of flight, the government proffered that Perez–Lugo participated in a conspiracy that intended to coordinate 19 additional drug transport operations. The quantity of drugs and money involved in the alleged offenses, in combination with Perez–Lugo's international connections, leads the Court to believe that Perez–Lugo deals and has dealt in trafficking large amounts of drugs. His release, therefore, would pose a danger of continued drug trafficking to the community.

### IV. Conclusion

For the reasons stated above, the Court finds that Perez–Lugo has failed to rebut the presumption of detention based both on risk of flight and on dangerousness to the community. No condition or combination of conditions, therefore, would adequately assure Perez–Lugo's consistent appearance at court proceedings or the safety of the community should he be released. Accordingly, the government's motion to vacate Magistrate Judge Carreño–Coll's order releasing Perez–Lugo is **GRANTED**. The Magistrate Judge's order releasing Perez–Lugo is **VACATED** and he is ordered **DETAINED**.

**IT IS SO ORDERED.**

---

6. The government contends that Perez–Lugo's wife, in her capacity as an American Airlines employee, helped him change his flight from the Dominican Republic to Puerto Rico shortly before he was detained in JFK on May 2, 2012. (Docket No. 40 at p. 15 l. 5–10.) The Court is concerned that she may assist him to flee; she has returned to work with American Airlines.

7. The government contends that Perez–Lugo's passport did not include a stamp indicating entry to Argentina, despite his arriving from Argentina on May 2, 2012. (Docket No. 29 at p. 13 n. 9.)